FILED

January 26 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0472

DA 15-0472

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 20

INTERSTATE EXPLORATIONS, LLC,

Plaintiff and Appellant,

v.

MORGEN FARM AND RANCH, INC.,

Defendant and Appellee.

APPEAL FROM:    District Court of the Seventh Judicial District,
In and For the County of Wibaux, Cause No. DV-14-14
Honorable Richard A. Simonton, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Loren J. O'Toole, II, O'Toole & O'Toole; Plentywood, Montana

For Appellee:

William A. D'Alton, D'Alton Law Firm, P.C.; Billings, Montana

Submitted on Briefs:  December 9, 2015

Decided:  January 26, 2016

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Interstate Explorations, LLC (Interstate), leases mineral rights beneath the surface estate of Morgen Farm and Ranch, Inc. (Morgen).  Interstate filed this action against Morgen in the District Court of the Seventh Judicial District, Wibaux County, requesting a declaration that Morgen had wrongfully denied an easement necessary for installing a power line to operate the well drilled by Interstate on the property.  Morgen answered and counterclaimed regarding alleged hydrocarbon spills on the property, requesting damages.  Asserting that Morgen had failed to first exhaust administrative remedies before initiating legal action for damages, Interstate moved to dismiss Morgen's counterclaims for lack of subject matter jurisdiction, which the District Court denied.  Interstate appeals.  We affirm and state the issue as follows:

¶2     *Did the District Court err by denying Interstate's motion to dismiss Morgen's counterclaims for lack of subject matter jurisdiction because Morgen did not first exhaust statutory remedies?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3     Morgen leased oil and gas rights on a portion of its property to Montana Oil Properties, Inc.  Morgen owns the surface rights to the property.  Montana Oil Properties later assigned its interest in the lease to Interstate, who drilled and completed a well on the Morgen property.

¶4     In July 2014, Interstate initiated this lawsuit, alleging that Morgen "has refused to execute the easement for [Montana-Dakota Utilities Co.] to enter the property to hook up the electrical line necessary to operate the well."  Interstate requested a judgment

2

declaring Interstate's interests and rights in the property, and also requested damages for the "increase in expenses . . . incurred by having to use a generator" to maintain the well on the site.

¶5     Morgen answered by denying that an easement was necessary because Interstate had the right to run power to the well by virtue of the lease, but counterclaiming that Interstate had damaged the surface of the property by spilling hydrocarbons. Morgen alleged that the damage had not been remedied by compensation and that Interstate was wrongfully entering and remaining on the property until the damage was paid, stating claims for trespass, unjust enrichment, and wrongful occupation. Interstate moved to dismiss Morgen's counterclaims for lack of subject matter jurisdiction, which the District Court denied. Interstate again raises the issue of subject matter jurisdiction on appeal.

## STANDARD OF REVIEW

¶6     "A district court's decision to grant or deny a motion to dismiss for lack of subject matter jurisdiction is a question of law that we review for correctness." *Pickett v. Cortese*, 2014 MT 166, ¶ 11, 375 Mont. 320, 328 P.3d 660 (citing *Ballas v. Missoula City Bd. of Adjustment*, 2007 MT 299, ¶ 9, 340 Mont. 56, 172 P.3d 1232). "[A] district court's conclusion as to its jurisdiction is always subject to *de novo* review, regardless of the context in which the conclusion is made." *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶ 53, n. 5, 345 Mont. 12, 192 P.3d 186 (citing *Stanley v. Lemire*, 2006 MT 304, 334 Mont. 489, 148 P.3d 643).

## DISCUSSION

¶7 *Did the District Court err by denying Interstate's motion to dismiss Morgen's counterclaims for lack of subject matter jurisdiction because Morgen did not first exhaust statutory remedies?*

¶8 The District Court explained that, pursuant to the provisions governing Surface Owner Damage and Disruption Compensation, §§ 82-10-501, et seq., MCA (referred to herein as the "Surface Damage Act" or "Act"), oil and gas developers and operators are responsible for damages sustained by the surface owner caused by oil and gas operations. Sections 82-10-504, 505, MCA. However, citing §§ 82-10-508 and 82-11-142(2), MCA, the District Court reasoned that the Act was not the exclusive remedy for surface damage claims, and that surface owners were entitled to seek other remedies permitted by law. Therefore, the court concluded it had subject matter jurisdiction over Morgen's claims.

¶9 Interstate argues that the District Court erred by not holding that Morgen's failure to exhaust administrative remedies set forth in Title 82, chapter 10, MCA, addressing surface damage compensation, deprived the District Court of subject matter jurisdiction to entertain Morgen's counterclaims seeking damages. Noting that § 82-11-141(1), MCA, provides that "the Montana Administrative Procedure Act (MAPA) applies to this chapter," Interstate argues that § 2-4-702(1)(a), MCA, MAPA's administrative exhaustion provision, requires that Morgen's surface damage claims first be pursued before the Montana Board of Oil and Gas Conservation (Board).

¶10 "To determine whether or not [a party] must exhaust administrative remedies, we look first to the statutory language, and where that is unclear, to legislative intent." *Stanley v. Holms*, 267 Mont. 316, 320, 883 P.2d 837, 839 (1994) (citation omitted)

4

(considering whether administrative remedies within the Commissioner of Labor and Industry divested district courts of subject matter jurisdiction over statutory wage claims). This case is resolved by a careful review of the language and structure of the governing statutes.

¶11    The parties' arguments involve two chapters. Chapter 10 of Title 82 of the Montana Code Annotated governs oil and gas issues generally and includes the provisions of the Surface Damage Act in Part 5. Part 5 provides for notification to the surface owner of planned drilling operations, notification to the oil or gas operator of any surface damage, and a process of exchanging offers of settlement to resolve damages issues. Sections 82-10-501, et seq., MCA. Then, Chapter 11 of Title 82 governs oil and gas conservation and Part 1 thereof includes the extensive provisions entitled "Regulation by Board of Oil and Gas Conservation." Sections 82-11-101, et seq., MCA.

¶12    Notably, the Surface Damage Act, in Chapter 10, is not structured under the regulatory powers of the Board set forth in Chapter 11. Further, the Board is not expressly given any role within the damage resolution provisions of the Act, and, indeed, is not even referenced by the Act. While § 82-10-510, MCA, adopts the penalty provision of Chapter 11 for violation of "the notice requirements of § 82-10-503" by an oil and gas operator, *see Pinnacle Gas Res., Inc. v. Diamond Cross Properties, LLC*, 2009 MT 12, ¶ 28, 349 Mont. 17, 201 P.3d 160, the Act gives the Board no other duty in the damage resolution process. The Board's lack of involvement with the process under Chapter 10 was confirmed during the 2007 Legislative Session, when Senate Bill 19 was

passed to make a minor revision to the Act.[1]  During a hearing before the Senate Natural Resources Committee, the following exchange occurred between Senator Greg Lind and Tom Richmond, administrator of the Board:

> Senator Lind:  'Under [] existing law, how often under § 82-10-505, liability and damages, can you give me an idea of the magnitude of the activity, does that come through your office?  Are you aware of those actions and disputes?'
>
> Tom Richmond:  'Mr. Chairman, we typically are not.  We don't have direct enforcement and rule-making authority under Chapter 10.  Our enforcement is under Chapter 11, that's why you'll see the penalty section referring to the penalties in Section [sic] 11, because there are no penalties in Section [sic] 10.  That was one of the rabbit holes we went down, trying to figure out what to do about penalties.  We decided to best defer to existing law.'

Mont. S. Comm. on Natural Res., *Hearing on S. Bill 19*, 60th Legis., Reg. Sess. (Jan. 15, 2007).

¶13     Thus, consistent with the plain language of the Act, the Board assumes no direct enforcement or rule-making authority under Chapter 10 regarding the dispute resolution process.  Rather, the Act is an attempt to facilitate communication between surface owners and oil and gas operators to help resolve damage disputes.  As such, while a statutory process has been enacted, it is not an agency or administrative proceeding that must be exhausted before litigation may be commenced.

¶14     Even if the process created by the Act were considered to be an administrative process, the Act specifically provides that the process is not an exclusive one.  Section

---

[1] SB 19 added the following language to § 82-10-504(1)(a), MCA:  "The surface owner and the oil and gas developer or operator shall attempt to  negotiate an agreement on damages."  Sec. 3, Ch. 57, L. 2007.

82-10-511, MCA, states that "[t]he remedies provided by this part do not preclude any person from seeking other remedies allowed by law." Thus, by statute, the process is not mandatory and need not be completed prior to initiation of litigation. While we need not cite legislative history in light of the statute's clear language, that history also demonstrates that the Legislature did not intend this process to be exclusive.[2]

¶15   Interstate's MAPA argument is likewise unavailing. Section 82-11-141(1), MCA, provides that MAPA is applicable "to this chapter"—meaning Chapter 11, the Board's enforcement powers, and not Chapter 10, which includes the Surface Damage Act.

¶16   The District Court correctly held that a surface owner is not required to exhaust an administrative remedy under the Surface Damage Act before litigating a damage claim in the courts, and correctly denied Interstate's motion to dismiss Morgen's counterclaims on this basis.

¶17   Affirmed.


/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA

---

[2] *See* Mont. S. Comm. on Natural Res., *Hearing on S. Bill 19*, 60th Legis., Reg. Sess. (Jan. 15, 2007).